**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-1636

COREY MCNELLIS,

     Plaintiff,

v.

DOUGLAS COUNTY SCHOOL DISTRICT, AND CATHY FRANKLIN, IN HER
INDIVIDUAL AND OFFICAL CAPACITY AS THE DIRECTOR OF HUMAN RESOURCES
FOR DOUGLAS COUNTY SCHOOL DISTRICT,

     Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, Corey McNellis, by and through his attorneys of KONTNIK | COHEN, LLC,
hereby bring this *Complaint and Jury Demand* against Defendants, Douglas County School
District ("DCSD") and Cathy Franklin, in her individual and official capacity (collectively
"Defendants"), under U.S. Const Amend. 1 and Section 42 U.S.C. § 1983, Title VII of the Civil
Rights Act of 1964 ("Title VII"), and the Colorado Anti-Discrimination Act ("CADA"), and
states as follows:

## I.     INTRODUCTION

1.     Mr. McNellis was employed by Ponderosa High School for approximately
fourteen (14) years without any disciplinary action. On October 5, 2021, three days after Mr.
McNellis expressed his Christian belief, as the father of a student at Ponderosa, and in response
to a question by a co-worker, Mr. McNellis was placed on leave and terminated. Defendants
discriminated toward Mr. McNellis based on his Christian belief and because he expressed his
views, which are protected by the First Amendment.

## PARTIES

2.      Plaintiff, Corey McNellis is currently, and at all times relevant to this lawsuit, a resident of the state of Colorado.

3.      Defendant DCSD, is located at 701 Prairie Hawk Drive Castle Rock, CO.

4.      Defendant DCSD is a publicly funded school district under the control of state and local government in Colorado.

5.      Defendant DCSD oversees Ponderosa, where Mr. McNellis worked from August 2007 until his wrongful termination on October 29, 2020.

6.      Defendant Franklin is currently, and at all times relevant to this lawsuit, a resident of the state of Colorado.

7.      Upon information and belief Defendant Franklin is currently, and at all times relevant to this lawsuit, was the Director of Human Resources for Defendant DCSD.

8.      Upon information and belief Defendant Franklin was responsible for the decision to terminate Mr. McNellis in violation of 42 U.S.C. § 1983, Title VII, and CADA.

## II.      JURISDICTION AND VENUE

9.      This action arises under the laws of the United States. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1343 for the federal law claims, and 28 U.S.C. § 1367 for the state law claims.

10.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in the District of Colorado and the Defendants reside in the State of Colorado.

11.      Mr. McNellis established all necessary conditions precedent to filing this Complaint and Jury Demand ("Complaint").

12.     A Joint Charge of Discrimination (CCRD Charge No. E2100010411 and EEOC Charge No. 32A202100404) was filed with the Colorado Civil Rights Division ("CCRD") and the Equal Employment Opportunity Commission ("EEOC") on February 23, 2021. Mr. McNellis received a letter of right to sue from the CCRD on April 5, 2022, and the EEOC by way of the U.S. Department of Justice on Mary 4, 2022. This action is being commenced within ninety (90) days of the CCRD and EEOC notices.

### III.     FACTUAL ALLEGATIONS

#### *Background Information*

13.     Mr. McNellis worked at Ponderosa High School for fourteen years.

14.     Mr. McNellis began his career with Ponderosa as the Social Studies Teacher and Assistant Coach in 2007 with a base salary of $37,196.00.

15.     For Mr. McNellis' evaluation for the 2007/2008 year, as a social studies teacher, Mr. McNellis received all professional remarks, which is the highest mark possible.

16.     At the end of the school year, DCSD elected to renew Mr. McNellis' contract as a Social Studies Teacher and promoted him to Head Coach for the 2008/2009 school year.

17.     Mr. McNellis was also provided with a pay increase for the new school year to $39,201.00.

18.     For Mr. McNellis' evaluation for the 2008/2009 year, as a social studies teacher, Mr. McNellis again received all professional remarks the highest marks possible.

19.     At the end of the school year, DCSD elected to renew Mr. McNellis' contract as a Social Studies Teacher and Head Coach for the 2009/2010 school year.

20.     For Mr. McNellis' evaluation for the 2009/2010 year, as a social studies teacher, Mr. McNellis again received all professional remarks, the highest marks possible.

21.     At the end of the school year, DCSD elected to renew Mr. McNellis' contract as a Social Studies Teacher and Head Coach for the 2010/2011 school year.

22.     For Mr. McNellis' evaluation for the 2010/2011 year, as a social studies teacher, Mr. McNellis received all professional remarks and one distinguished remark.

23.     Mr. McNellis received comments such as "his students certainly do feel valued and challenged in his classes. He strives to make his lessons rigorous and relevant for his kids."

24.     At the end of the school year, DCSD elected to renew Mr. McNellis' contract as a Social Studies Teacher and Head Coach for the 2011/2012 school year.

25.     For Mr. McNellis' evaluation for the 2011/2012 year, as a social studies teacher, Mr. McNellis received all highly effective and effective marks, the two highest possible remarks.

26.     At the end of the school year, DCSD elected to promote Mr. McNellis to Dean of Students for the 2012/2013 school year.

27.     This promotion came with a pay increase to $40,650.00.

28.     For Mr. McNellis' evaluation for the 2012/2013 year, as the Dean of Students, Mr. McNellis never received less than a 3.0 rating out of a total 4.0 and was consistently rated as highly effective.

29.     At the end of the school year, DCSD elected to renew Mr. McNellis' contract as the Dean of Students and Head Coach for the 2013/2014 school year.

30.     Mr. McNellis also received a pay increase to $42,276.00 for the 2013/2014 school year.

31.     At the end of the school year, DCSD elected to renew Mr. McNellis' contract as the Dean of Students and Head Coach for the 2014/2015 school year.

32.     Mr. McNellis was given a raise to $43,755.66 for the 2014/2015 school year.

33.     At the end of the school year, DCSD elected to promote Mr. McNellis to the positions of Athletic Director and Assistant Principal for the 2016/2017 school year.

34.     This promotion came with a pay increase to an annual salary of approximately $90,000.

35.     At the time of his termination, Mr. McNellis was earning approximately $98,285 annually.

36.     Throughout his employment with DCSD, Mr. McNellis had consistently received excellent performance reviews, as well as a steady increase in salary.

37.     Until October 5, 2020, Mr. McNellis never received disciplinary action.

38.     During the 2020 school year, Mr. McNellis was the parent of a child who was attending Ponderosa.

*The Laramie Project Emails*

39.     On October 2, 2020, during the peak of the COVID-19 pandemic, Ms. Kayla Diaz, Ponderosa's Theatre Director, sent a group email to the entire Ponderosa staff including Mr. McNellis.

40.     Ms. Diaz informed all staff members that Ponderosa's Theatre Company would be performing The Laramie Project on October 23 and 24 of 2020.

41.     The Laramie Project is a religiously charged play that covers distressing material. The play depicts the aftermath of the 1998 murder of Matthew Shepard in Laramie, Wyoming. The murder is widely acknowledged to have been a hate crime motivated by Shepard's sexuality.

42.     The play consists of a series of interviews from members of the Laramie community. Several of the characters interviewed are Christian leaders, some of whom share

unsavory opinions regarding Shepard's murder, and cite their Christian faith as the reason for their views.

43.     In her October 2, 2020 email, Ms. Diaz acknowledged the controversial nature of the play. The email states, in relevant part:

> Due to language and content discussed in the show (there is no violence shown, only discussed) this is not a family-friendly show. We are advertising "[f]or mature audiences" and I would generally recommend high school age and up. We will be reaching out more soon about advertising in the school, but it is important that I can answer any question you may have and that you are aware of the nature of the play so that if we have students who have an aggressively adverse reaction to our show choice that you can support us in helping students understand. This is a play about perspectives, and we would not want anyone in the school to believe we are making a statement against anything other than hate and violence.

44.     Ms. Diaz's October 2, 2020, email specifically elicited responses from the rest of the staff stating that she would be happy to "answer any questions [they]may have."

45.     On October 2, 2020, Mr. McNellis responded to the email chain crated by Ms. Diaz and stated:

> Thanks Kayla [Ms. Diaz], I appreciate the email and I really do admire the hard work that you do. As a Dad of a student here and also as an employee in the school, what is my recourse if I disagree with the production? Was this a heads up to see if everyone is cool?

46.     Mr. McNellis' response was written on Friday evening and was written as a father of a student at Ponderosa, asking what recourse he may have to a school production that is not family friendly.

47.     Several staff members responded to Ms. Diaz's email offering their expertise.

48.     Mr. Monroe, the history teacher, responded to the October 2, 2020, email from Ms. Diaz acknowledging the difficulty of the subject matter and offering to help by providing a "Social Studies perspective,"

49.     Ms. Carda responded and emphasized that, "[n]ot everyone has to agree with every ideology that exists, but it is the discourse that is invoked that matters."

50.     Mr. McNellis responded to the emails from the other staff and offered to provide a Christian perspective.

51.     Mr. McNellis made it clear that offer was in his capacity as a father stating, "[f]or the record, all of administration does not agree with me on this. I am totally solo."

52.     Between October 2, 2021, and October 5, 2021, the emails regarding The Laramie Project were shared with DCSD's Human Resources Director, Cathy Franklin, the Director of Schools, Daniel Winsor, and Ponderosa Principal, Tim Ottmann.

*Ponderosa's Discrimination and Retaliation Toward Mr. McNellis*

53.     On Saturday, Mr. Winsor called Mr. McNellis and informed him that Mr. McNellis needed to stay home on Monday.

54.     Mr. McNellis asked Mr. Winsor why he was being told to stay home and if he acted unprofessionally in anyway.

55.     Mr. Winsor informed Mr. McNellis that nothing was unprofessional, but that Ponderosa needed Mr. McNellis to stay home Monday because of his "religious comments."

56.     On October 5, 2020, three days after Mr. McNellis expressed his Christian belief in a public forum, Ms. Franklin, Mr. Winsor, and Mr. Ottmann called Mr. McNellis for a virtual meeting (the "Meeting").

57.     Ms. Franklin, Mr. Winsor, and Mr. Ottmann had reviewed the emails regarding the Laramie Project prior to the Meeting.

58.     During the Meeting, Defendants informed Mr. McNellis that he was being placed on leave.

59.     Defendants' decision to place Mr. McNellis on leave was an adverse employment decision.

60.     Defendants' decision to place Mr. McNellis on leave was due to Mr. McNellis' decision to express his First Amendment views, as a father, regarding his Christian beliefs.

61.     Defendants' decision to place Mr. McNellis on leave was in retaliation to Mr. McNellis' decision to express his views under the First Amendment regarding his Christian belief.

62.     At the time Defendants placed Mr. McNellis on leave, Defendants did not have a legitimate non-discriminatory reason to place Mr. McNellis on leave or to terminate Mr. McNellis.

63.     At the conclusion of the Meeting, Defendants informed Mr. McNellis that it would be conducting further investigation regarding Mr. McNellis' email related to The Laramie Project.

64.     At the conclusion of the Meeting, however, Defendants already possessed all the emails related to Mr. McNellis' statement(s) regarding The Laramie Project.

65.     At the conclusion of the Meeting, there was nothing further to investigate regarding Mr. McNellis' email statements related to The Laramie Project.

66.     Instead, Defendants elected to "investigate" Mr. McNellis based on his expression of his Christian faith as a father of a student at Ponderosa.

67.     Defendants' decision to investigate Mr. McNellis based on his statement regarding his Christian faith constitutes an adverse employment action.

68.     Defendants' decision to investigate Mr. McNellis based on his statement regarding his Christian faith was retaliatory.

69.     Defendants used the investigation to try to obtain evidence that it could use to support a decision to terminate Mr. McNellis.

70.     During its investigation, Defendants received a complaint from a teacher claiming that Mr. McNellis was part of a good ole boys club.

71.     The allegation that Mr. McNellis was part of a good ole boys club included numerous other male teachers, and administrators including Principal Ottmann.

72.     None of the other male teachers or administrators including Principal Ottmann were investigated, placed on leave, or otherwise disciplined.

73.     Mr. McNellis was the only individual investigated, placed on leave, and/or disciplined based on the vague allegations that there was a good ole boys club at Ponderosa.

74.     Defendants' decision to discipline Mr. McNellis based on a vague and ambiguous allegation that he was part of a good ole boys club was pretextual.

75.     Mr. McNellis was treated less favorably than his counterparts who were also named as part of a good ole boys club based on his decision to express his religious affiliation and exercise his First Amendment rights.

76.     During its investigation, Defendants also uncovered a single email indicating that Mr. McNellis had complained "as a parent" about Ponderosa's communications regarding its COVID safety protocols.

77.     Other faculty and administrators complained about Ponderosa's communications regarding its COVID safety protocols.

78.     No other faculty or administrators were investigated, placed on leave, and/or disciplined based on their complaints regarding Ponderosa's communications related to its safety protocols.

79.     Defendants' decision to terminate Mr. McNellis based on a complaint related to Ponderosa's communications regarding its COVID safety protocols was pretextual.

80.     Mr. McNellis was treated less favorably than his counterparts who also complained about Ponderosa's COVID safety protocols.

81.     Mr. McNellis was never consulted or given the opportunity to defend himself during the purported investigation.

82.     On October 29, 2020, after a purported investigation, Defendants terminated Mr. McNellis' employment.

83.     Ponderosa directly cited Mr. McNellis' emails regarding The Laramie Project as the reason for his termination.

84.     Mr. Ottmann, the Principal of Ponderosa, admits that the contents of Mr. McNellis email regarding The Laramie Project were the "catalyst for his firing."

85.     Mr. Ottmann further admits that Mr. McNellis was terminated based on his religious views.

86.     As a direct and proximate result of Defendants' conduct, Mr. McNellis has been damaged in an amount to be proven at trial.

## IV.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Defendant DCSD: Discrimination - Title VII, 42 U.S.C. § 2000 e-2(a)(1))

87.     At all relevant times, Mr. McNellis is considered a protected class under Title VII because he is a Christian. 42 U.S.C. § 2000e-2(a)(1).

88.     At all relevant times, Mr. McNellis was qualified to perform the position of Assistant Principal and Athletic Director.

89.     Defendants discriminated against Mr. McNellis based on his religion.

90.     Defendants treated Mr. McNellis less favorably than his similarly situated employees by taking the following actions including, but not limited to, the following:

a.   Investigating only Mr. McNellis despite multiple complaints against other members of Defendants' staff and even members of the Administration;

b.   Failing to involve Mr. McNellis in the investigation against him;

c.   Failing to interview anyone who would support Mr. McNellis or provide a different opinion than those who Defendants interviewed;

d.   Placing Mr. McNellis on administrative leave; and

e.   Terminating Mr. McNellis based on comments he made in his individual capacity as a father of a child at Defendants' school.

91.     As a result of Defendants' actions, Mr. McNellis has suffered damages, including but not limited to the loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

92.     Mr. McNellis is entitled to his attorney's fees and costs incurred in this matter.

93.     Mr. McNellis is further entitled to all other forms of relief as permitted under Title VII.

**SECOND CLAIM FOR RELIEF**
(Defendant DCSD: Retaliation - Title VII, 42 U.S.C. § 2000e-3(a))

121.     Mr. McNellis hereby incorporates the allegations as if fully set forth herein.

122.     At all relevant times, Mr. McNellis is considered a protected class under Title VII because he is a Christian. 42 U.S.C. § 2000e-2(a)(1).

123.     At all relevant times, Mr. McNellis was qualified to perform the position of Assistant Principal and Athletic Director.

124.     Defendants retaliated against Mr. McNellis based on his religion.

125.     As a direct result of Mr. McNellis' identification as Christian male, Defendants subjected Mr. McNellis to actions which a reasonable employee would have found materially adverse.

126.     Defendants treated Mr. McNellis more adversely than similarly situated co-workers.

127.     Defendants' retaliation included, but was not limited to:

    a.   Investigating only Mr. McNellis despite multiple complaints against other members of Defendants staff and even members of the Administration;

    b.   Placing Mr. McNellis on administrative leave; and

    c.   Terminating Mr. McNellis based on comments he made in his individual capacity as a Christian and a father of a child at Defendants' school.

128.     Defendants' retaliatory conduct was the direct and proximate cause of Mr. McNellis' injures, damages, and losses.

129.     As a result of Defendants' actions, Mr. McNellis has suffered damages, including but not limited to the loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

130.     Mr. McNellis is entitled to his attorney's fees and costs incurred in this matter.

131.     Mr. McNellis is further entitled to all other forms of relief as permitted under Title VII.

### THIRD CLAIM FOR RELIEF
(Defendant DCSD: Discrimination – CADA, C.R.S. §§ 24-34-401 *et seq*)

132.     Mr. McNellis hereby incorporates the allegations as if fully set forth herein.

133.     At all relevant times, Mr. McNellis is considered a protected class under CADA because he is a Christian.

134.   At all relevant times, Mr. McNellis was qualified to perform the position of Assistant Principal and Athletic Director.

135.   Defendants discriminated against Mr. McNellis based on his religion.

136.   Defendants treated Mr. McNellis more adversely than similarly situated co-workers by taking the following actions including, but not limited to, the following:

    a.   Investigating only Mr. McNellis despite multiple complaints against other members of Defendants staff and even members of the Administration;

    b.   Failing to involve Mr. McNellis in the investigation against him;

    c.   Failing to interview anyone who would support Mr. McNellis or provide a different opinion than those who Defendants interviewed;

    d.   Placing Mr. McNellis on administrative leave; and

    e.   Terminating Mr. McNellis based on comments he made in his individual capacity as a father of a child at Defendants' school.

137.   Defendants' conduct was the direct and proximate cause of Mr. McNellis' injuries, damages, and losses.

138.   As a result of Defendants' actions, Mr. McNellis has suffered damages, including but not limited to the loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

139.   Mr. McNellis is entitled to his attorney's fees and costs incurred in this matter.

140.   Mr. McNellis is further entitled to all other forms of relief as permitted under CADA.

## FOURTH CLAIM FOR RELIEF
(Defendant DCSD: Retaliation - CADA, C.R.S. §§ 24-34-401 *et seq*)

141.   Mr. McNellis hereby incorporates the allegations as if fully set forth herein.

142.　At all relevant times, Mr. McNellis is considered a protected class under CADA because he is a Christian.

143.　At all relevant times, Mr. McNellis was qualified to perform the position of Assistant Principal and Athletic Director.

144.　Defendants retaliated against Mr. McNellis based on his religion as described herein.

145.　As a direct result of Mr. McNellis' opposition to the activities prohibited by CADA, Defendants subjected Mr. McNellis to actions which a reasonable employee would have found materially adverse.

146.　Defendants treated Mr. McNellis more adversely than similarly situated co-workers.

147.　Defendants' retaliation included, but was not limited to:

    a.　Investigating only Mr. McNellis despite multiple complaints against other members of Defendants' staff and even members of the Administration;

    b.　Placing Mr. McNellis on administrative leave; and

    c.　Terminating Mr. McNellis based on comments he made in his individual capacity as a Christian and a father of a child at Defendants' school.

148.　Defendants' retaliatory conduct was the direct and proximate cause of Mr. McNellis' injuries, damages, and losses.

149.　As a result of Defendants' actions, Mr. McNellis has suffered damages including but not limited to the loss of past and future wages and benefits, loss of professional opportunities, emotional distress, and mental pain and anguish.

150.　Mr. McNellis is entitled to his attorney's fees and costs incurred in this matter.

151.    Mr. McNellis is further entitled to all other forms of relief as permitted under CADA.

### FIFTH CLAIM FOR RELIEF
(Defendants: Retaliation – Free Speech, 42 USC § 1983)

152.    Mr. McNellis hereby incorporates the foregoing allegations as if fully set forth herein.

153.    Section 1983 of 42 U.S.C. in pertinent part states "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party  injured in an action at law, Suit in equity, or other proper proceeding for redress…"

154.    When Mr. McNellis expressed his concern, as a parent, regarding the performance of The Laramie Project at Ponderosa, he was exercising his right to free speech under the First Amendment to the U.S. Constitution and under 42 U.S.C. §1983.

155.    Mr. McNellis' speech on October 2, 2020, related to a school production was on a topic of public concern.

156.    Defendants placed Mr. McNellis on administrative leave and launched their investigation in retaliation against Mr. McNellis' exercise of protected free speech.

157.    Defendants terminated Mr. McNellis based on Mr. McNellis' exercise of protected free speech.

158.    When Defendants retaliated against Mr. McNellis, as a public entity, they did so under the color of state law.

159.     As a parent of a child at Ponderosa High School, Mr. McNellis' concern for the wellbeing of his child and for the other students at Ponderosa drastically outweighed Ponderosa's interest in performing a highly controversial play, in what was already a stressful time for the students.

160.     Defendants' actions to place Mr. McNellis on administrative leave, conduct an investigation, and terminate him proximately caused Mr. McNellis significant damages including but not limited to, mental anguish, emotional distress, loss of enjoyment of life, and damage to his reputation.

161.     Defendants' decision to terminate Mr. McNellis proximately caused Mr. McNellis significant damages, including but not limited to, loss of back pay, loss of front pay, mental anguish, emotional distress, loss of enjoyment of life, and damage to his reputation.

162.     Mr. McNellis is further entitled to all other forms of relief as permitted under 42 USC § 1983.

**SIXTH CLAIM FOR RELIEF**
(Defendants: Due Process, 42 USC § 1983)

163.     Mr. McNellis hereby incorporates the foregoing allegations as if fully set forth herein.

164.     Section 1983 of 42 U.S.C. in pertinent part states "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party  injured in an action at law, Suit in equity, or other proper proceeding for redress…"

165.    The Fourteenth (14th) Amendment in relevant part states "nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

166.    When Mr. McNellis expressed his concern, as a parent, regarding the performance of The Laramie Project at Ponderosa, he was exercising his right to free speech under the First Amendment to the U.S. Constitution and under 42 U.S.C. §1983.

167.    Mr. McNellis' speech on October 2, 2020, related to a school play was on a topic of public concern.

168.    When Defendants launched an investigation against Mr. McNellis and placed Mr. McNellis on administrative leave and eventually terminated Mr. McNellis, they did so under the color of state law.

169.    Defendants placed Mr. McNellis on administrative leave and subsequently launched an investigation into Mr. McNellis' emails regarding the Laramie Project but refused to listen or interview Mr. McNellis denying him of his Due Process Rights under the Fourteenth (14th) Amendment.

170.    Defendants also refused to interview individuals within Ponderosa who were willing to speak on Mr. McNellis' behalf in direct violation of Mr. McNellis' Due Process rights under the Fourteenth (14th) Amendment.

171.    Ultimately Defendants' investigation, that did not include Mr. McNellis or anyone who would speak on his behalf, led Defendants to terminate Mr. McNellis.

172.    As a parent of a child at Ponderosa High School, Mr. McNellis' concern for the wellbeing of his child and for the other students at Ponderosa drastically outweighed Ponderosa's

interest in performing a highly controversial play, in what was already a stressful time for the students.

173.    Defendants' actions to place Mr. McNellis on administrative leave and investigate him proximately caused Mr. McNellis significant damages including but not limited to, mental anguish, emotional distress, loss of enjoyment of life, and damage to his reputation.

174.    Defendants' decision to terminate Mr. McNellis proximately caused Mr. McNellis significant damages, including but not limited to, loss of back pay, loss of front pay, mental anguish, emotional distress, loss of enjoyment of life, and damage to his reputation.

175.    Mr. McNellis is further entitled to all other forms of relief as permitted under 42 USC § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Mr. McNellis respectfully requests a trial by jury on all issues so triable, and damages, as follows:

a.    The Court award Plaintiff compensatory damages, including but not limited to those for emotional distress and pain and suffering;

b.    The Court award Plaintiff actual economic damages and consequential damages arising out of Defendants' conduct as established at trial;

c.    The Court award Plaintiff punitive damages for claims as allowed by law and in amount to be determined at trial;

d.    The Court award Plaintiff his reasonable attorneys' fees and costs in this action as permitted by law;

e.      The Court award pre-judgment and post-judgment interest at the highest lawful

rate; and

f.      The Court award any such further relief as this Court deems just and proper.

**Plaintiff requests a trial to a jury on all issues so triable.**

Dated: July 1, 2022

                                    Respectfully submitted,

                                    /s *Spencer J. Kontnik*
                                    Spencer J. Kontnik, #47447
                                    Matthew Fenicle, # 57055
                                    KONTNIK | COHEN, LLC
                                    201 Steele Street, Suite 210
                                    Denver, Colorado 80206
                                    Telephone: (720) 449-8448
                                    E-Mail: skontnik@kontnikcohen.com
                                    E-Mail: mfenicle@kontnikcohen.com
                                    Attorneys for Plaintiff: COREY MCNELLIS