IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 22-cv-01636-RM-STV

COREY MCNELLIS,

    Plaintiff,

v.

DOUGLAS COUNTY SCHOOL DISTRICT,

    Defendant.

---

# ORDER

---

This employment dispute is before the Court on Defendant's Motion to Dismiss (ECF No. 34), which has been fully briefed (ECF Nos. 37, 38). For the reasons below, the Motion is granted.

## I.    LEGAL STANDARD

To defeat a motion to dismiss, the complaint must allege a "plausible" right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010).  However, conclusory allegations are insufficient, *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009), and courts "are not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555 (quotation omitted).

## II.     BACKGROUND

Plaintiff worked at Ponderosa High School, a public school overseen and operated by Defendant, for fourteen years.  (ECF No. 24, ¶¶ 7, 17.)  At the time he was terminated in October 2020, he had been promoted to the positions of Athletic Director and Assistant Principal, and his child was attending the school.  (*Id.* at ¶¶ 39, 47.)  In his capacity as Assistant Principal, Plaintiff was part of the Administrative Team—comprised of the Principal, Tim Ottmann, and other Assistant Principals—which met weekly to discuss issues regarding extracurricular activities.  (*Id.* at ¶¶ 41, 42.)

On October 2, 2020, Ponderosa's Theatre Director, Kayla Diaz, sent an email to Ponderosa staff about an upcoming school play, *The Laramie Project*.  (*Id.* at ¶¶ 50, 53.)  The email[1] explained: "*The Laramie Project* is the true story of the impact of a hate crime in a small town, told through interviews with community members and translated into a script."  (ECF No. 19-2 at 1.)  It further stated: "In 1998, Matthew Shepard, a gay college student, was murdered on the outskirts of Laramie, Wyoming.  His death sparked outrage throughout the nation, as well as controversy.  There were many contesting opinions and arguments, but in the end, what matters

---

[1] On a motion to dismiss, "[c]ourts are permitted to review documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."  *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013) (quotation omitted).  Thus, the Court may consider the email exchange prompted by Diaz's email without converting the Motion into a motion for summary judgment.

to our show is how it affected the Laramie community." (*Id.*)  And it included this disclaimer: "Due to language and the content discussed in the show (there is no violence shown, only discussed) this is not a family-friendly show.  We are advertising 'For mature audiences' and I would generally recommend high school age and up." (*Id.* at 2.)  Due to the COVID pandemic, the show was to be live-streamed. (*Id.* at 1.)  The email was sent on a Friday afternoon. (*Id.* at 1.)

Several staff members responded to the email Friday evening and Saturday morning.  The responses were generally supportive, and some suggested that the show would complement Ponderosa's anti-bullying program.  For example, one recipient responded, "Thank you so for much for deciding to do a show that so closely connects to Ponderosa High School's core values of kindness, empathy, and respect." (*Id.* at 2.)  Another responded, "As a history teacher I'm glad to hear that our students are engaging with important historical events across subject areas." (*Id.* at 3.)

Plaintiff responded by sending three emails on Friday evening and another one on Saturday morning, stating as follows:

> Thanks Kayla, I appreciate the email and I really do admire the hard work that you do.  As a Dad of a student here and also as an employee in the school, what is my recourse if I disagree with the production?  Was this a heads up to see if everyone is cool?
>
> * * *
>
> As a christian I would love to collaborate with your project.  Please let me know if the love that Jesus can provide will help your play.
>
> * * *
>
> For the record, all of administration does not agree with me on this.  I am totally solo.  Good night Mustangs!

> \* \* \*
>
> I understand people support this.  Forgive me for having a different viewpoint and the audacity to publicly share it.

(*Id.* at 2, 4, 5, 7.)  The emails had the same signature block:

> Corey McNellis
> Athletic Director/Assistant Principal
> Ponderosa High School
> 303-387-4100

(*Id.*)

The emails were shared with Defendant's Human Resources Director, Cathy Franklin; the Director of Schools, Daniel Winsor; and Mr. Ottmann.  (ECF No. 24, ¶ 66.)  On Saturday, Mr. Winsor called Plaintiff and told him he needed to stay home on Monday because of his "religious comments."  (*Id.* at ¶¶ 67, 70.)

The following Monday, Ms. Franklin, Mr. Winsor, and Mr. Ottmann called Plaintiff for a virtual meeting.  (*Id.* at ¶ 77.)  Plaintiff was informed that he was being placed on leave and investigated due to his religious comments.  (*Id.* at ¶¶ 80, 81.)  While on leave, Plaintiff complained to Mr. Ottmann and several coworkers that he was being investigated based on his Christian beliefs.  (*Id.* at ¶¶ 95, 96.)  As part of its investigation, Defendant received a complaint from a teacher claiming Plaintiff was part of a "good ole boys club" that included other male teachers and administrators, including Mr. Ottmann.  (*Id.* at ¶ 101.)  Defendant also uncovered an email indicating Plaintiff had complained "as a parent" about Ponderosa's communications regarding its COVID safety protocols.  (*Id.* at ¶ 106.)

On October 29, 2020, Defendant terminated Plaintiff's employment, citing his emails regarding *The Laramie Project* as the reason for his termination.  (*Id.* at ¶¶ 113, 114.)

In his Amended Complaint, Plaintiff alleges that he was discriminated and retaliated against because he is a Christian and that he was fired in retaliation for exercising his First Amendment rights. He asserts claims for (1) discrimination in violation of Title VII; (2) retaliation in violation of Title VII; (3) discrimination in violation of the Colorado Anti-Discrimination Act ("CADA"); (4) retaliation in violation of CADA; and (5) retaliation under 42 U.S.C. § 1983 for exercising his right to free speech under the First Amendment.

### III.   ANALYSIS

Defendant has moved to dismiss each of Plaintiff's claims.

#### A.   First Amendment Retaliation Claim

A public employee's First Amendment claim is assessed using the five-prong *Garcetti/Pickering* test. *Roberts v. Winder*, 16 F.4th 1367, 1381 (10th Cir. 2021) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006); *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968)). That test requires the Court to determine whether

> (1) the speech was made pursuant to the employee's official duties, (2) the speech was made on a matter of public concern, (3) the government's interests as an employer in promoting efficient public service outweigh a plaintiff's free speech interests, (4) the speech was a motivating factor in the adverse employment action, and (5) the same employment decision would have been made without the protected speech.

*Id.* The first three prongs are issues of law to be resolved by the Court, while the last two are ordinarily for the trier of fact. *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 745 (10th Cir. 2010).

Defendant contends that Plaintiff failed to plead sufficient facts to establish the first, second, and fourth prongs of the test, and the Court agrees.

5

1. <u>Speech Made Pursuant to the Employee's Official Duties</u>

"The Tenth Circuit's decisions addressing the first step of the *Garcetti/Pickering* analysis have taken a broad view of the meaning of speech that is pursuant to an employee's official duties." *Id.* at 746 (quotation omitted). "[I]f an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1203 (10th Cir. 2007). Included in this category is speech relating to tasks within an employee's employment responsibilities as well as speech that is generally consistent with the type of activities the employee was paid to do. *See id.* However, "[t]he ultimate question is whether the employee speaks as a citizen or instead as a government employee—an individual acting in his or her professional capacity." *Id.* (quotation omitted). Thus, not all speech about an employee's work or that occurs at work is made pursuant to the employee's official duties. *Id.* at 1204. Courts "must take a practical view of all the facts and circumstances surrounding the speech and the employment relationship." *Id.*

Here, Plaintiff expressed his concerns about *The Laramie Project* "as an employee" in emails that were responses to a staff email sent by Ms. Diaz. (ECF No. 19-2 at 2.) The Complaint does not contain allegations demonstrating or suggesting that Plaintiff would have been aware of the show—at least at the time of the speech at issue—were it not for his status as a Ponderosa staff member. Plaintiff's emails were sent from his district email address and listed his positions of Athletic Director and Assistant Principal in the signature portion, and Plaintiff does not allege that anyone besides Ponderosa staff were the intended recipients of his emails. Thus, this is not a case involving speech in the form of social media posts or statements to news

6

outlets.  *Cf. Cowden v. Bd. of Governors*, 622 F. Supp. 3d 1019, 1031-33 (D. Colo. 2022).  The circumstances suggest that commenting on issues related to the show with other Ponderosa staff members is generally consistent with the types of activities Plaintiff was paid to do, particularly as a member of the Administrative Team.  These factors all weigh in favor of finding Plaintiff's emails were made pursuant to his official duties.

On the other hand, Plaintiff points out that he also expressed his concerns "[a]s a Dad of a student here."  (ECF No. 19-2 at 2.)  However, there is no allegation that other parents of Ponderosa students were included as recipients of Ms. Diaz's email, which included a letter addressed, "Dear Staff."  (*Id.* at 1.)  In the absence of allegations showing that he would have been included in the initial email or had access to this specific email exchange but for his role as an employee, the Court is not persuaded that Plaintiff's reference to his parental status suffices to establish that he was speaking as a private citizen rather than a public employee.  *See Rohrbough*, 596 F.3d at 747 (noting that "the employee's chosen audience" and "chosen method of disseminating speech" are appropriately considered when assessing whether speech falls within the scope of the employee's official duties).

Nor does Plaintiff's additional comment that "all of administration does not agree with me on this.  I am totally solo" mean that his emails were not made pursuant to his official duties.  (ECF No. 19-2 at 5.)  Indeed, it could reasonably be interpreted to mean that he was speaking as an administrator, albeit one without the full backing of the Administrative Team.  While the comment might also suggest that other Ponderosa employees did not necessarily agree with Plaintiff's viewpoint on presenting *The Laramie Project* at the school, in the context of the ongoing exchange of emails among Ponderosa staff members, it does not demonstrate that

7

Plaintiff was speaking solely as a private citizen.

Finally, the fact that the emails were sent "after hours" does not move the needle here. *Cf. Brammer-Hoelter*, 492 F.3d at 1205 (concluding that speech that occurred outside the school, after hours, and with ordinary citizens and parents was not within the scope of the plaintiffs' official duties as teachers). Employees commonly read and send work-related emails outside of work hours, and Plaintiff has not alleged that it was remarkable or unusual that Ponderosa employees responded to Ms. Diaz's email "after hours" or that Ponderosa staff members—members of the Administrative Team included—did not regularly discuss work issues via email. And again, the absence of any indication that other parents or other members of the public were included in the email exchange reinforces the notion that the initial email and staff members' responses to it were sent pursuant to the employees' official duties.

Therefore, the Court finds Plaintiff has not alleged facts that would satisfy the first prong of the *Garcetti/Pickering* test.

2. Speech Was Made on a Matter of Public Concern

Regarding the second prong of the test, "[m]atters of concern are those of interest to the community, whether for social, political, or other reasons." *Id.* (quotation omitted). "In determining whether speech pertains to a matter of public concern, the court may consider the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest." *Id.* (quotation omitted).

The fact that *The Laramie Project* itself gives rise to controversy and certainly addresses matters of public concern does not mean Plaintiff's emails about it necessarily rise to the same

8

level.  *See, e.g.*, *Boring v. Buncombe Cnty. Bd. of Educ.*, 136 F.3d 364, 368 (4th Cir. 1998) (finding high school drama teacher's selection of play did not present a matter of public concern).  Plaintiff's professed disagreement with the play, both as a parent and as a Christian, is a matter of personal, rather than public concern.  Similarly, Plaintiff's professed interest in collaborating with the show is not akin to matters such as elections, illegal conduct by government officials, or restrictions on freedom that have been held to be matters of public concern.  *See id.* at 1206.  Rather, it is a matter that "does not directly affect the community at large" and may aptly be considered "internal in scope and personal in nature." *Bunger v. Univ. of Okla.*, 95 F.3d 987, 992 (10th Cir. 1996).  As a result, the Court finds that Plaintiff's emails do not address a matter of public concern.

      3.  <u>Speech Was a Motivating Factor in the Adverse Employment Action</u>

  Regarding the fourth prong of the *Garcetti/Pickering* test, the Complaint lacks factual allegations that would establish that Plaintiff's emails were a motivating factor in his firing.  Although Plaintiff makes the conclusory assertion that "Defendant directly cited [his] emails regarding The Laramie Project as the reason for his termination" (ECF No. 24, ¶ 114), there are no specific allegations as to how the decision was made, or even by whom it was made.  Conclusory allegations are insufficient to survive dismissal.  *Cory*, 583 F.3d at 1244.  Plaintiff's allegations, taken as true, establish that his emails about *The Laramie Project* prompted Defendant to suspend Plaintiff and begin an investigation into his conduct at Ponderosa.  And they establish that Mr. Ottmann, Ms. Franklin, and Mr. Winsor were primarily responsible for the decision to fire him.  But it does not follow that simply because these individuals knew about the emails, his firing was "substantially motivated by" the emails as opposed to other

information that might have been gleaned from the investigation. Although the Complaint neglects to recite or describe Defendant's stated reasons for firing him, that does not mean the Court is required to accept Plaintiff's conclusory assertion as to the basis for his termination. Therefore, the Court finds the absence of factual allegations that would establish the fourth prong of the *Garcetti/Pickering* test provides another reason for dismissing Plaintiff's First Amendment retaliation claim.

To the extent Plaintiff contends that the investigation itself was retaliatory, he has not cited any authority for the proposition that a mere investigation can amount to an adverse employment action for the purpose of stating a retaliation claim. Nor does the Complaint contain allegations showing that the investigation amounted to "substantial harassment and abuse" that would support such a claim. *Brammer-Hoelter*, 492 F.3d at 1208.

Accordingly, the Complaint fails to state a First Amendment retaliation claim.

### B.   Title VII and CADA Discrimination Claims

Because Colorado and federal law apply the same standards to discrimination claims, Plaintiff's Title VII and CADA claims rise or fall together. *See Johnson v. Weld Cnty.*, 594 F.3d 1202, 1219 n.11 (10th Cir. 2010). A plaintiff proves such a claim either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). To set forth a prima facie case of discrimination, Plaintiff must establish that (1) he is a member of a protected class, (2) he suffered an adverse employment action, (3) he qualified for the position at issue, and (4) he was treated less favorably than others not in the protected class. *See id.* If the plaintiff establishes a prima facie case of discrimination, then the burden shifts to the

10

defendant to produce a legitimate, non-discriminatory reason for the adverse employment action. *Id.* Once the defendant does so, the burden shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is a pretext for discrimination. *Id.* The Court finds Plaintiff has failed to plead a prima facie case, so the rest of the burden-shifting framework does not come into play.

Plaintiff's discrimination claims are premised on his protected status as a Christian; therefore, to establish the fourth prong of his prima facie case he needed to plead that he was treated less favorably than non-Christians at Ponderosa or in the school district. Though he alleges in a conclusory fashion that other faculty and administrators engaged in conduct similar to his—such as being part of a "good ole boys club" and complaining about COVID safety protocols—without being investigated, placed on leave, or disciplined, nowhere does he allege that these individuals were non-Christians. Indeed, he fails to plead any facts about the religious beliefs of anyone associated with this case besides himself. Nor does he allege that the conduct of employees that he considers were similarly situated to him was more egregious or even as egregious as his. Although Plaintiff alleges that Mr. Ottmann, Ms. Franklin, and Mr. Winsor were the ones primarily responsible for firing him and that they knew about his emails concerning *The Laramie Project*, that does not amount to proof of religious discrimination. Plaintiff's argument to the contrary ignores the possibility that—consistent with the allegations in the Complaint—these individuals could also be Christians who might even have disagreed with Ms. Diaz's decision to perform *The Laramie Project* themselves while also believing that Plaintiff's comments were unprofessional and that, coupled with other conduct gleaned from the investigation, his termination was warranted. In any event, the allegations fall well short of

11

establishing the Plaintiff was treated less favorably than non-Christians.

In short, the Court finds Plaintiff's allegations have not nudged his discrimination claims across the line from conceivable to plausible, and therefore they must be dismissed. *See Twombly*, 550 U.S. at 570.

### C. Title VII and CADA Retaliation Claims

To state a prima facie Title VII or CADA retaliation claim, Plaintiff must show that (1) he engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action. *See Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019). Again, the Court finds Plaintiff has failed to set forth allegations establishing a prima face case.

First, Plaintiff's emails about *The Laramie Project* cannot be considered protected opposition to discrimination for purposes of stating a retaliation claim. Plaintiff does not argue otherwise. Second, while his complaints to Mr. Ottmann and other coworkers about the investigation and his suspension might be considered protected opposition to discrimination, there are no allegations showing a causal connection between those complaints and Plaintiff's firing. Plaintiff's conclusory allegations to the contrary are devoid of factual support.

Finally, Plaintiff's reliance on the letter[2] from Mr. Ottmann written after he retired as principal is misplaced. While the letter explains that Plaintiff's emails were the "catalyst" for his firing, nowhere does it state or imply that Plaintiff's firing was causally related to his opposition

---

[2] The letter is referred to in the Complaint, and Defendant does not dispute its authenticity; therefore, the Court considers it here. *See Toone*, 716 F.3d at 521.

to discrimination.  (ECF No. 34-4 at 2.)  Moreover, regardless of Mr. Ottmann's opinions about Plaintiff's termination, the letter also states that "it wasn't [Mr. Ottmann's] decision to make." (*Id.*)  Under the circumstances, it does not support the theory that Mr. Ottmann or anyone else retaliated against Plaintiff for his protected activity.

Accordingly, the Court finds Plaintiff's allegations fail to state a retaliation claim.

### IV. CONCLUSION

Therefore, the Motion to Dismiss (ECF No. 34) is GRANTED, and the Clerk is directed to CLOSE this case.

DATED this 28th day of August, 2023.

BY THE COURT:

_____
RAYMOND P. MOORE
Senior United States District Judge